**Janet Rubin LANDESBERG,**
**Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-**
**MENT OF EMPLOYMENT SER-**
**VICES, Respondent.**

**Washington Metropolitan Area Transit**
**Authority, Intervenor.**

**No. 98–AA–1634.**

District of Columbia Court of Appeals.

Argued Sept. 6, 2000.

Decided March 28, 2002.

---

James R. Becker, for petitioner.

Robert C. Baker, for intervenor.

Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

This matter comes before the court on petitioner, Janet Landesberg's petition for review of the Department of Employment Services' (DOES) denial of disability benefits pursuant to the District of Columbia Workers' Compensation Act of 1979 (the Act), as amended, D.C.Code § 36–301 *et seq.* (1997 Repl.). On appeal, Landesberg argues that the hearing examiner's decision denying her benefits is not supported by substantial evidence in the record. We affirm in part, and reverse and remand in part.

I.

Landesberg filed a timely claim for disability benefits to DOES, and a full evidentiary hearing was held on May 30, May 31 and June 3, 1996, before hearing examiner David L. Boddie. Several of Landesberg's claims for disability benefits were denied, and the decision of the hearing examiner was affirmed by the Director of DOES.

Landesberg worked for the Washington Metropolitan Area Transit Authority (WMATA) as an assistant general counsel for approximately eleven years. While employed by WMATA, Landesberg suffered separate injuries that she claimed were job related. On January 17, 1990, Landesberg was testing the operation of bus doors in preparation for a trial, and allowed another employee of WMATA to open and close the doors upon her several times while pictures were taken. As a result, Landesberg was struck several times on her sides, including her shoulders and hips, by the bus doors. She alleged injuries to her back, shoulders, hips, and neck, as well as to a cervical disc. She sought treatment for her lower back from a neurosurgeon, Michael W. Dennis, M.D. on January 30, 1990. In February 1990, she began experiencing neck pain and sought chiropractic treatment from L.G. Sassadeck, D.C. Landesberg was also seen for a neurological evaluation by Ramon Jenkins, M.D. on February 20, 1990, complaining of lower back pain. On March 2, 1990, Landesberg received her second and final chiropractic neck treatment from Dr. Sassadeck. In April 1990, Landesberg began receiving treatment from Thomas Roselle, D.C. for neck pain. On March 7, 1990, Landesberg sought psychiatric counseling from David Wood, M.D. for treatment of post-traumatic depressive symptoms. Landesberg returned to work after the incident in November 1990, on a part-time, light duty basis, with restrictions on overhead lifting.

On January 17, 1992, also while working as an assistant general counsel for WMATA, Landesberg "misstepped" and jarred her spine while stepping down from a jury box in the Superior Court during a scheduling conference. She alleged injuries to her neck, back and hip. Landesberg did not take any leave from work, but she did receive medical treatment for the alleged injuries in early June 1992. She sought treatment from Dr. Dennis and Dr. Roselle.

On July 16, 1992, while traveling to take a deposition, Landesberg was struck on the left temple and left shoulder by a falling suitcase on an airport shuttle bus. Landesberg claimed that the accident caused her traumatic brain injury, visual impairments, cervical spine injury, left shoulder injury, as well as left hip and lower back injuries. She returned to work in October 1992, and subsequently resigned from her employment with WMATA on April 3, 1993. She alleges that she resigned because of WMATA's retaliatory actions toward her.

## II.

■ "We will not disturb an agency decision if it rationally flows from the factual findings on which it is based and if those findings are supported by substantial evidence in the record." *Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999). The Director of DOES conducts a limited review of decisions of a hearing examiner "to determine whether the examiner's findings are supported by substantial evidence" in the record. *Id.* " 'This court likewise is limited to determining whether the Director's order is in accordance with the law and supported by substantial evidence in the record.' " *Id.* (citation omitted). "The mere existence of evidence ... contrary [to the hearing examiner's findings] even if substantial does not permit this court to substitute its judgment for that of the agency." *Id.* at 1252. We will, therefore, affirm the Director's ruling unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law. *See Teal v. District of Columbia Dep't of Employment Servs.*, 580 A.2d 647, 650 (D.C.1990) (citing D.C.Code § 1–1510(a)(3)) (other citation omitted). Furthermore, "[c]redibility determinations of a hearing examiner are accorded special deference by this court." [1] *Id.* at 651.

## III.

■ In this jurisdiction, when a claimant presents some "initial demonstration" of an employment connection to his or her disability, the claimant is entitled to a presumption under the Act that his or her injury arose out of and in the course of his or her employment. *See Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987). This presumption is designed to effectuate the humanitarian purposes of the statute, reflecting a strong legislative policy favoring awards in arguable cases. *Id.* " 'To defeat a claim for compensation the employer must rebut the presumption by offering [substantial] evidence that the claim is not one arising out of and in the course of employment.' " *Dunston v. Columbia Dep't of Employment Servs.*, 509 A.2d 109, 111 (D.C.1986) (citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1351 (D.C.1992). The hearing examiner is allowed to draw any reasonable inference from the evidence presented. *See George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985). The Act, however, does not afford the claimant a presumption regarding the nature and extent of his or her disability. *See Dunston*, 509 A.2d at 111. Instead, the claimant maintains the burden of proving the nature and extent of her disability. *See id.* The Act is a wage loss statute, and disability means injury that results in wage loss. *See Davis–Dodson v. District of Columbia Dep't of Employment Servs.*, 697 A.2d 1214, 1219 (D.C.1997). The hearing examiner found that Landesberg's only claim for loss of wages was for temporary partial disability from October 26, 1992 to October 30, 1992, and for temporary total disability from November 2, 1992 until December 21, 1992. In addition, the hearing examiner found that Landesberg suffered no loss of wages from her accidents during the months of October, November, and December of 1992. Landesberg complains of numerous inju-

---

**1.** For this reason, Landesberg's arguments that the hearing examiner's assessment of her credibility is not supported by the record must fail.

ries resulting from the three separate accidents. We will discuss each accident and the hearing examiner's conclusions with respect to each claim of disability entitlement.

### A. Bus Door Accident (January 17, 1990)

As a result of the January 17, 1990 accident, Landesberg claims that she suffered physical injuries to her lower back, cervical disc, and neck. In addition, she alleges that the accident caused her emotional and psychological harm in the form of post-traumatic depressive symptoms for which she received medical treatment. The hearing examiner viewed each of her claims of disability separately to determine whether the claim was compensable under the Act.

■ With respect to Landesberg's claim for benefits for the injuries to her lower back, the hearing examiner determined that Landesberg failed to prove that the nature and extent of her injuries resulted in a loss of wages for the relevant time period of her disability claim. Specifically, the hearing examiner found that she was injured by the bus door accident, but that her injuries had resolved before the claimed disability period, so she was not entitled to benefits for that period of time. In reaching that decision, the hearing examiner relied on the opinion of Dr. Dennis. In the medical records submitted as part of the record in this case, Dr. Dennis indicated that by June 5, 1990, Landesberg's back condition had resolved because an examination revealed that she had a full range of motion of her lumbar spine, and as of September 6, 1990, there was no

mention of any complications.[2] Because the period for which Landesberg claimed a loss of wages did not begin to run until October 26, 1992, the Director's decision denying Landesberg's disability benefits for injuries to her lower back that resulted from the bus door accident is supported by substantial evidence in the record.

■ While the hearing examiner found that Landesberg's lower back injury arose out of the accident involving the bus doors, he concluded that neither the cervical disc injury, the neck injury, nor the psychological injuries suffered by Landesberg were related to the accident. In making the determination that the cervical disc injury was not related to the January 17, 1990 accident, the hearing examiner relied on an October 15, 1990, opinion by Dr. Dennis that "the cervical condition from which Ms. Landesberg now suffers is not related to the January 17, 1990 accident." Because there is substantial evidence in the record to support the hearing examiner's findings, we find no error in the Director's affirmance in this regard. See *Children's Defense Fund,* 726 A.2d at 1247.

■ As for Landesberg's claim that she injured her neck as a result of the bus door accident, the hearing examiner also relied on the October 15, 1990 report by Dr. Dennis that concluded that there was no causal relationship between the injury and the accident. Unlike in the case of the cervical disc injury, however, Dr. Dennis subsequently reconsidered his opinion regarding the neck injury and, based on new information provided to him by Landesberg, concluded in a November 20, 1990 report that her neck injury was indeed caused by the bus door accident, and

---

2. Dr. Dennis' June 5, 1990 report, instructing Landesberg to return for a follow-up visit in six weeks, stated that: "Examination of the back reveals full range of motion of the lumbar spine. There is no demonstrable paraver-

tebral muscle spasms[,]" and Dr. Dennis' September 6, 1990 report makes no mention of any complications with respect to Landesberg's back condition.

therefore, did arise out of her employment with WMATA. The hearing examiner rejected Dr. Dennis' new opinion, finding that the new information provided by Landesberg was not significant enough to justify a departure from his earlier opinion. While our case law makes it clear that it is the hearing examiner's role to evaluate the evidence presented, *see George Hyman Constr. Co.*, 498 A.2d at 566, it is also well settled that the judgment of the hearing examiner or the Director "will not be upheld unless it is in accordance with the law and supported by substantial evidence in the record." *See Children's Defense Fund*, 726 A.2d at 1247.

In this case, while it is true that Dr. Dennis initially concluded that there was no causal relationship between the bus door accident and Landesberg's neck injury, his subsequent conflicting opinion substantially undermined the probative value of that opinion. The only other evidence in the record regarding Landesberg's neck injury claim is an opinion by Dr. Roselle, a physician who also treated Landesberg. Dr. Roselle concluded that Landesberg's neck injury was, in fact, caused by the bus doors.[3] It appears from a fair reading of the record that the hearing examiner substituted his judgment as to what was medically significant evidence of a casual connection between Landesberg's neck injury and the accident involving the bus door for that of the treating physician. The hearing examiner then relied on his substituted judgment to support a finding that there was no causal connection between the bus door accident and Landesberg's neck injury. Because we find such a decision is not supported by substantial evidence in the record, we reverse the Director's order

affirming the hearing examiner's findings with respect to Landesberg's claim of disability for her neck injuries arising out of the January 17, 1990 bus accident.

 With respect to Landesberg's claim that she developed post-traumatic depressive symptoms as a result of the accident, the hearing examiner found that the evidence relied on by Landesberg to support her claim was insufficient as a matter of law. We agree. While Landesberg's psychiatrist, Dr. Wood opined that the January 17, 1990 accident caused emotional stress for Landesberg because it placed "limitations on [her] activities," such an opinion without more is insufficient to support a claim of disability based on emotional injury. In *Porter v. District of Columbia Dep't of Employment Servs.*, 625 A.2d 886 (D.C.1993), we upheld the application of an objective causal test to claims of emotional injury. "The director may properly apply a rule for causation in this difficult area of emotional injury that discourages spurious claims-one focusing on the objective conditions of the job and their effect on the 'normal employee' not predisposed to the injury by a mental disorder." *Id.* at 889. First, based largely on admissions by Landesberg, the hearing examiner found that she was predisposed to psychological problems. Next, Dr. Wood's opinion did not indicate that the conditions that caused the emotional injury were so stressful that a reasonable person not predisposed to psychological injury might suffer the same injury. However, psychological injuries are only compensable under the Act if the accident constitutes a sufficient stressor. *See Porter v. District of Columbia Dep't of Employment Servs.*, 625 A.2d 886, 889 (D.C.1993).

---

**3.** The record reflects that the hearing examiner also discredited Dr. Roselle's opinion in this regard.

Based on the finding by the hearing examiner that Landesberg was predisposed to psychological injury, and the lack of any evidence in the record that an employee not so predisposed would have suffered a similar injury arising out of the same circumstances, the Director's decision is supported by the record.[4]

### B. The Jury Box Accident (January 17, 1992)

■ Landesberg claims that she aggravated her prior lower back injury when she misstepped while alighting from a Superior Court jury box. As a result of the accident, Landesberg sought and received significant amounts of medical treatment from a variety of providers for injuries she sustained to her lower back. WMATA did not challenge whether the injury she suffered was work related; instead it argued before the hearing examiner that some of the treatment received by Landesberg was unnecessary and excessive. Although Landesberg introduced evidence in the form of medical opinion that she was still partially disabled as a result of the accident, the hearing examiner found that some of the treatment received by Landesberg for her injury was "beyond excessive." After culling together all of Landesberg's treatment history for her aggravated lower back injury that resulted from her jury box misstep, the hearing examiner found that the injury sustained by Landesberg had been resolved as of April 29, 1992, and thus, any claims for

disability benefits after that date were excessive. In making that finding, the hearing examiner was persuaded by the Utilization Review Report (URR) dated April 1, 1996 that was prepared by WMATA's doctors after examining Landesberg. The URR concluded that Landesberg's medical care was mismanaged and improperly supervised by Dr. Dennis. According to the hearing examiner, the URR also concluded that Landesberg's injury had been resolved as of April 29, 1992. Our review of the URR, however, does not reveal such a conclusion. In fact, we are unable to determine from a review of the URR the significance, if any, of the April 29, 1992 date.

Because the URR does not contain a representation that the injury Landesberg sustained to her lower back on January 17, 1992 was resolved by April 29, 1992, the hearing examiner's decision that further treatment after that date was excessive, is not supported by substantial evidence in the record. Therefore, we find the Director's decision affirming the denial of medical benefits after April 29, 1992, to be in error.[5]

### C. Airport Shuttle Bus Accident (July 16, 1992)

Landesberg contests the denial of disability benefits for physical injuries she sustained to her head, neck, and back as a result of a suitcase falling on her as she traveled on an airport shuttle bus while on work related travel.[6] According to her

---

4. The hearing examiner also properly concluded that Landesberg's psychological injuries with respect to her July 16, 1992 accident were not compensable for the same reasons.

5. Landesberg also argues that the employer has failed to pay her medical bills for services she received prior to April 29, 1992. While Landesberg may have a legitimate claim for noncompliance with the Director's order, that issue is not properly before this court.

Landesberg's redress, if any, lies with the DOES, where she can seek redress against the employer for noncompliance with the compensation order. *See* D.C.Code § 36–319 (1997 Repl.).

6. Landesberg also challenges the denial of disability benefits for psychological injuries she incurred as a result of the accident. As we noted earlier, we discern no error in the decision of the Director denying Landesberg

treating physician, Dr. Dennis, as well as Drs. Roselle and Porvaznik, doctors of osteopathy, the July 16, 1992 bus accident aggravated Landesberg's preexisting back and more specifically neck conditions.

The hearing examiner found that the physical injuries sustained by Landesberg as a result of the falling suitcase arose out of Landesberg's employment, but denied her claims for disability benefits because the medical evidence in the record indicated that her injuries were resolved as of October 22, 1992, and she suffered no wage loss that would trigger the applicability of the Act until after that date. In reaching his decision, the hearing examiner relied primarily on medical reports submitted by her treating physicians, Drs. Stuart R. Stark and Preston Calvert, both of whom are board-certified neurologists. Dr. Stark concluded that Landesberg "did not suffer from any neurologic, neuro-ophthalmologic, medical, or musculoskeletal condition related to the July 16, 1992 accident[,]" and Dr. Calvert, who saw Landesberg during September and October of 1992, determined that Landesberg is "neuro-ophthalmologically intact, with no limitations on her activities." The hearing examiner also relied in part on a medical report by Dr. Dennis that Landesberg should have returned to work on a part-time, restrictive duty capacity in Oc-

tober, 1996. The examiner, did reject however, the notion that she was only capable of working part-time in a restricted duty capacity because Dr. Dennis failed to explain why Landesberg could not perform her job on a full-time basis. Landesberg argues that the hearing examiner erred in crediting the medical opinions of Drs. Stark and Calvert over the opinions of her expert neuropsychologist, Dr. Jack Spector.[7] Her arguments, however, are unpersuasive primarily because our standard of review does not permit us to substitute our judgment about the quality of the evidence for that of the hearing examiner. *Children's Defense Fund*, 726 A.2d at 1252.

Landesberg also asks us to hold that the hearing examiner erred in relying on Dr. Stark's medical opinions, because she had dismissed him as her treating physician prior to that date. The hearing examiner made a finding that Landesberg chose Dr. Stark as her treating physician, and Dr. Stark referred her to Dr. Calvert, who then became her second treating physician in September of 1992. Here, it is irrelevant whether Landesberg considered Dr. Stark or Dr. Calvert as her treating physician because their medical opinions were consistent. Assuming Landesberg's argument is that Dr. Spector was actually her treating phy-

benefits for her alleged psychological disorder because she failed to introduce evidence that an individual not predisposed to psychological injuries would have suffered the same psychological injury from a similar accident.

7. Landesberg asserts that the hearing examiner failed to consider the opinion of her neuropsychologist, Jack Spector, M.D. The hearing examiner, however, specifically references Dr. Spector and other neurosurgeons before finding that Landesberg did not suffer a physical cerebral injury. This court has articulated that "hearing examiners are not required to inventory the evidence and explain in detail why a particular part of it is accepted or

rejected." *Sturgis*, 629 A.2d at 555. In fact, a hearing examiner is not required to explain why he or she credits the opinion of one side over the other. *McKinley v. District of Columbia Dep't of Employment Servs.*, 696 A.2d 1377, 1386 (D.C.1997); *Metropolitan Poultry v. District of Columbia Dep't of Employment Servs.*, 706 A.2d 33, 35 (D.C.1998). In *McEvily*, 500 A.2d at 1024, this court expressed that where "there is sufficient evidence to support the Director's findings, as here, the mere existence of substantial evidence to the contrary to that finding does not allow this court to substitute its judgment for that of the Director."

sician, it is without merit, as Landesberg never received approval from her employer or the Office of Workers' Compensation as required by the Act to make Dr. Spector her treating physician.[8] *See* D.C.Code § 36–307(b)(3); *King v. District of Columbia Dep't of Employment Servs.,* 560 A.2d 1067, 1071 (D.C.1989).

■ Additionally, Landesberg claims that the hearing examiner erred in failing to accord appropriate weight to the fact that Dr. Calvert had referred her to other medical personnel for treatment of the injuries she suffered from the falling suitcase after October 22, 1992. She argues that the hearing examiner abused his discretion by failing to make findings regarding payments for thyroid tests that were performed after the accident. With respect to Landesberg's contention that treatment referrals made by Dr. Calvert were indicative of her continued disability from the accident after the October 22, 1992 date, a letter prepared by Dr. Calvert and included in the record significantly undermines her argument. The letter explicitly states that Landesberg was not referred to other doctors for treatment of the injuries she suffered as a result of the shuttle bus accident. With respect to payment for the thyroid tests, the hearing examiner specifically found that medical responses that were incurred as a result of the July 16, 1992 shuttle bus accident were to be covered by the $22,500 settlement award from her no-fault claim against Hertz Corporation, the owner of the shuttle bus.

■ Finally, with respect to the shuttle bus accident, Landesberg argues that the hearing examiner's failure to address her claim for temporary total disability for her shoulder injury was error even though it was the subject of a stipulation between the parties. While it is true that the hearing examiner failed to consider Landesberg's claim for disability based on her alleged shoulder injury, WMATA argues that the hearing examiner's failure to explicitly address this claim is harmless error. *See 4934, Inc. v. District of Columbia Dep't of Employment Servs.,* 605 A.2d 50 (D.C.1992). WMATA contends that because it voluntarily paid temporary total disability benefits to Landesberg from July 16, 1992 through October 21, 1992, and the hearing examiner found that Landesberg's injuries resolved by October 22, 1992, WMATA would not be accountable to pay any benefits claimed by Landesberg after this date. Because there is substantial evidence in the record supporting the hearing examiner's finding that Landesberg's injuries had resolved by October 22, 1992, and Landesberg does not dispute that she received benefits from WMATA for the period between the date of her injury and the date her injuries resolved, we agree that the hearing examiner's failure to address this issue in his compensation order was harmless.

### D. Landesberg's Retaliatory Discharge Claim

■ Landesberg argues that the hearing examiner, in finding that she voluntarily resigned as opposed to being constructively discharged, failed to consider

---

8. According to her treating physician, Dr. Dennis, as well as Drs. Roselle and Porvaznik, doctors of osteopathy, the July 16, 1992 bus accident aggravated Landesberg's preexisting back and more specifically neck conditions. The hearing examiner found that the physical injuries sustained by Landesberg as a result of the falling suitcase arose out of Landesberg's employment, but denied her claims for disability benefits because the medical evidence in the record indicated that her injuries were resolved as of October 22, 1992, and she suffered no wage loss that would trigger the applicability of the Act until after that date.

evidence she presented of the company's animus towards her. Specifically, she alleges that the hearing examiner ignored evidence that WMATA's general counsel believed that she was making fraudulent insurance claims for long term disability benefits and that the WMATA claims department manipulated Dr. Stark's medical report contrary to company policy. She also claims that WMATA's failure to remove her from some but not all of her assigned cases recognized her disability while setting her up for failure. Despite her representations on appeal, however, Landesberg, has failed to cite any record support for her contention that she presented such evidence to the hearing examiner. It is not our obligation to comb through the voluminous record in this case to determine whether there is any evidence to support her argument.

Further, in reviewing the Compensation Order issued in this case, the hearing examiner found that Landesberg failed to establish a *prima facie* showing of retaliatory discharge. According to the hearing examiner, Landesberg's claim of retaliatory discharge was based on the following facts: she filed a claim for worker's compensation; WMATA voluntarily paid temporary total benefits from July 16, 1992 until October 21, 1992; WMATA would not let her use sick leave during that time period; and WMATA required her to return to work on October 22, 1992, despite her contention that she was still disabled. The hearing examiner found that Landesberg's evidence of alleged animus was insufficient to establish a *prima facie* case of retaliatory discharge because the employer's order for Landesberg to return to full, unrestricted work was made pursuant to a

bona fide physician's evaluation that cleared her for full, unrestricted duty. Given the facts outlined above, the hearing examiner did not err in concluding that Landesberg failed to establish a *prima facie* case of retaliatory discharge.[9]

Accordingly the decision of DOES is affirmed in part, and reversed and remanded in part.

*So ordered.*

---

**9.** Finally, Landesberg claims that the hearing examiner erred by failing to address her claim that the various injuries she suffered doing these three accidents were exacerbated by her return to work in October of 1992. However,

we are unable to ascertain whether this matter is properly before us because Landesberg has again failed to direct us to that portion of the record that supports this claim.