Ismalia NGOM, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent

and

Starbucks Coffee, et al., Intervenor.

No. 05–AA–888.

District of Columbia Court of Appeals.

Argued Sept. 19, 2006.
Decided Dec. 28, 2006.

Matthew J. Peffer, for petitioner.

Rebecca L. Dannenberg, Herndon, VA, for intervenor.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General for the District of Columbia, filed a statement in lieu of brief for respondent.

Before RUIZ and GLICKMAN, Associate Judges, and STEADMAN, Senior Judge.

RUIZ, Associate Judge:

The Compensation Review Board of the Department of Employment Services ("DOES") affirmed the Compensation Order of an Administrative Law Judge ("ALJ") of the DOES Office of Hearings and Adjudication which held that petitioner, Ismalia Ngom, was not entitled to workers' compensation because he left his employment "voluntarily." Petitioner asks this court to review and reverse the decision rendered by DOES. After reviewing the decision of the ALJ, we cannot discern the basis for the ALJ's finding that Mr. Ngom left his work voluntarily, and we remand for further explanation of the ALJ's decision.

## I.

Mr. Ngom injured his back lifting a crate of milk while working at Starbucks Coffee ("Starbucks") in Washington, D.C. on September 14, 2000. Mr. Ngom took a leave of absence to recover from his injury, and he returned to work at Starbucks in December, 2000.

On February 13, 2001, Mr. Ngom resigned from his position at Starbucks to visit his family in Senegal. When he returned from Senegal, Mr. Ngom was offered a position at Starbucks at a location other than the one he had previously been employed, but Mr. Ngom declined the offer because he did not want to move to another location.

Petitioner filed for workers' compensation on two occasions. When Mr. Ngom first sought workers' compensation in January, 2003, ALJ Karen R. Calmeise found that Mr. Ngom's back pain was causally related to his injury at Starbucks, and therefore Mr. Ngom was entitled to compensation for his medical care. However, ALJ Calmeise held that because Mr. Ngom resigned from his position at Starbucks in 2001 for reasons unrelated to his injury, there was no causal connection between the injury and any economic disability after his resignation, which precluded him from recovering wage loss compensation.

Mr. Ngom subsequently moved to Atlanta and obtained employment at the Atlanta Journal Constitution and Cracker Barrel Restaurant. While employed in Atlanta, Mr. Ngom experienced back pain. On October 20, 2003, he visited a physician, Dr. Lippitt, who, after examining Mr. Ngom, recommended that Mr. Ngom refrain from working. Despite the doctor's recommendations, Mr. Ngom continued to work in

order to maintain an income. Later, Dr. Lippitt also examined a January 15, 2004 MRI that was performed on Mr. Ngom, which appeared to confirm Mr. Ngom's back pain. Mr. Ngom testified that in April, 2004[1], he took leaves of absence from his positions at the Atlanta Journal Constitution and Cracker Barrel Restaurant because Dr. Lippitt had instructed him to "just stop working."

On June 9, 2004, Mr. Ngom was again experiencing back pain and went to the emergency room at a hospital in Atlanta. The attending doctor diagnosed Mr. Ngom with "acute and chronic low back pain" and wrote in his report that Mr. Ngom should "no[t] work until further notice of specialist." Soon after this hospital visit, Mr. Ngom went to Senegal because he said he could no longer afford to live in the United States while unemployed.

Immediately after Mr. Ngom returned to the United States in 2004, he again sought workers' compensation in the District of Columbia from Starbucks. On this occasion, the hearing was held before ALJ Anand K. Verma, who found that Mr. Ngom was entitled to compensation for medical expenses because his back pain was causally related to his September, 2000 injury incurred while working at Starbucks. With respect to compensation for wage loss, ALJ Verma found that Mr. Ngom was ineligible for the period during which he was actually employed in Atlanta and receiving wages, as well as for the period commencing upon his leaves of absence from the Atlanta Journal Constitution and Cracker Barrel Restaurant because he "voluntarily" left those positions in 2004.

In concluding that Mr. Ngom had left his employment in Atlanta voluntarily, the ALJ stated:

I find on or about January 2001 following his work injury on September 14, 2000, claimant returned to work in a modified position offered by employer wherein he worked until sometime in June 2004 ... I find sometime in June 2004, claimant quit his job to go to Senegal, West Africa ... As claimant's unrefuted testimony disclosed he continued to work with employer in a modified duty position until June 2004 notwithstanding his ongoing complaints of pain attributable to the original work injury of September 14, 2000, and he admittedly quit that job immediately prior to his trip to Senegal in June 2004.

In so stating, the ALJ appears to have been confused about the actual evidence in the record.

## II.

 As an initial matter, we decline to consider whether Mr. Ngom is ineligible for workers' compensation on the basis articulated by ALJ Calmeise in the first proceeding, that Mr. Ngom resigned from Starbucks in 2001 for reasons unrelated to his injury. In his order, ALJ Verma did not rely on ALJ Calmeise's finding that Mr. Ngom left his position at Starbucks voluntarily to preclude a subsequent award of wage loss compensation. Even if we could affirm on an alternative legal ground not considered by the agency because the result is "clearly ordained by law," *Howard Univ. Hosp. v. Dist. of Columbia Dep't of Employment Servs.*, 881 A.2d 567, 574 (D.C.2005), Starbucks never raised this defense before ALJ Verma; likewise, on appeal, Starbucks did not cite any authority for the proposition that once Mr. Ngom voluntarily resigned from Starbucks, he was subsequently precluded from obtaining wage loss benefits based on that em-

---

1. Mr. Ngom testified at the hearing that he left his Atlanta employment in April, 2004 but his brief on appeal indicates that he left in March, 2004.

ployment relationship. *See, e.g., Powers v. Dist. of Columbia Dep't of Employment Servs.*, 566 A.2d 1068, 1068–69 (D.C.1989).[2] Nor did Starbucks raise the defense of *res judicata* in an attempt to prevent relitigation of a matter conclusively decided by ALJ Cameise. *See Borger Mgmt. v. Sindram*, 886 A.2d 52, 59 (D.C.2005) (*res judicata* is applicable to administrative proceedings); *Poulin v. Bowen*, 260 U.S.App. D.C. 142, 146, 817 F.2d 865, 869 (1987) (*res judicata* must be raised before the reviewing court can apply the doctrine). Because both arguments have been waived by Starbucks, we do not consider them and therefore turn to review the petition on the ground decided by the agency.

### III.

■ "In workers' compensation cases, we defer to the decision of the agency director provided that the decision flows rationally from facts supported by substantial evidence in the record." *Marriott Int'l v. Dist. of Columbia Dep't of Employment Servs.*, 834 A.2d 882, 885 (D.C.2003). This court affords "special deference" to credibility determinations made by the hearing examiner. *Georgetown Univ. v. Dist. of Columbia Dep't of Employment Servs.*, 830 A.2d 865, 870 (D.C.2003). "The hearing examiner is allowed to draw any reasonable inference from the evidence presented." *See Landesberg v. Dist. of Columbia Dep't of Employment Servs.*, 794 A.2d 607, 612 (D.C.2002). In workers' compensation cases, the claimant "maintains the burden of proving the nature and extent of [his] disability." *Id.* While the testimony of a treating physician is generally preferred over the testimony of a physician retained for litigation purposes, the hearing examiner "may reject the testimony of a treating physician due to conflicting evidence," *Harris v. Dist. of Columbia Dep't of Employment Servs.*, 746 A.2d 297,

302 (D.C.2000), but "must give reasons for doing so." *Upchurch v. Dist. of Columbia Dep't of Employment Servs.*, 783 A.2d 623, 628–29 (D.C.2001).

■ "Disability" is an economic concept that requires wage loss. *Landesberg*, 794 A.2d at 612. ALJ Verma properly determined that, absent any evidence of lower wages, Mr. Ngom was not entitled to wage loss benefits during the period he was actually employed at the Atlanta Journal Constitution and Cracker Barrel Restaurant. However, ALJ Verma found that Mr. Ngom was employed in Atlanta until June, 2004, while the hearing transcript indicates that Mr. Ngom testified, without contradiction, that he left his employment in April, 2004. We remand so the ALJ may amend his findings or clarify how, in light of the evidence of record, he determined Mr. Ngom was employed until June, 2004.

■ Where an employee "voluntarily limits his or her income or fails to accept employment commensurate with the employee's abilities, the employee's wages after the employee becomes disabled shall be deemed to be the amount the employee would earn if the employee did not voluntarily limit his or her income." D.C.Code § 32–1508(3)(V)(iii) (2001). However, with regard to his disability subsequent to leaving his positions at the Atlanta Journal Constitution and Cracker Barrel Restaurant, Mr. Ngom testified that he had been experiencing back pain since his accident at Starbucks in 2000, and ALJ Verma specifically found that Mr. Ngom's testimony regarding "the nature and extent" of his injuries was credible.

Further, Mr. Ngom's testimony was corroborated by medical evidence. In October, 2003, Dr. Lippitt found Mr. Ngom's injury so serious that he instructed Mr.

---

2. During oral argument, this issue was raised by members of the court.

Ngom to refrain from working. Although Mr. Ngom did not follow the doctor's orders because of economic necessity, his back pain was so severe that he visited the emergency room in June, 2004, where the treating physician noted his injury was "acute and chronic" and also instructed Mr. Ngom to refrain from working. There was no contradictory evidence, as ALJ Verma afforded no weight to a November, 2000 Independent Medical Examination that found petitioner's MRI to be "normal," because the IME was "too remote in time." On this record, there was no basis for rejecting the opinions of the treating physicians.

Mr. Ngom testified that he continued to work until April, 2004 to maintain an income but ultimately stopped because Dr. Lippitt had instructed him to take leaves of absence. He also testified that he went to Senegal in June of that year because he could no longer afford to live in the United States while unemployed. In light of the seemingly uncontroverted testimony of Mr. Ngom that he left his positions at the Atlanta Journal Constitution and Cracker Barrel Restaurant for reasons related to his injury and the several serious factual misunderstandings of the ALJ, we must reverse and remand the case for further consideration.

*So ordered.*