**Wilbur HILIGH, Petitioner,**

**Federal Express Corporation, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPART- MENT OF EMPLOYMENT SER- VICES, Respondent.**

**Nos. 06–AA–51, 06–AA–85.**

District of Columbia Court of Appeals.

Argued Feb. 13, 2007.

Decided Nov. 8, 2007.

William S. Hopkins, for Wilbur Hiligh.

David M. Schoenfeld, Gathersburgh, MD, for Federal Express Corporation, et al.

William J. Earl, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for respondent.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and SCHWELB, Senior Judge.

WASHINGTON, Chief Judge:

Petitioner, Wilbur Hiligh, seeks review, *inter alia*, of the District of Columbia Department of Employment Services' ("DOES") determination that Hiligh, who is classified as temporarily totally disabled, was not entitled to the minimum compensation rate, pursuant to D.C.Code § 32-1505(c) (2001), but instead to his actual average weekly wage. The employer, Federal Express Corporation ("Federal Express"), in its petition, argues that DOES erred because the D.C.Code mandates Hiligh's compensation rate to be no more than two-thirds of his actual average weekly wage. We affirm in part and reverse in part.

## I.

Hiligh slipped and fell on the edge of a metal loading ramp, injuring himself in the testicles, penis, and groin area on January 31, 1997, while performing his duties as a part-time package handler with Federal Express. Hiligh sought immediate medical treatment and did not return to work until October 1997 due to his physical injuries.[1] Hiligh worked in his usual occupation with Federal Express until December 1997, when he was terminated due to excessive tardiness.

In December of 1998, a year after Federal Express terminated him, Hiligh presented to Dr. Lawrence Sank, Ph.D., a psychologist. Dr. Sank evaluated Hiligh and identified significant distress that related to his workplace injury. Dr. Sank diagnosed Hiligh with major depressive disorder, erectile dysfunction, and dysparuenia.[2] He concluded that Hiligh's condition impaired his ability to function at work (and elsewhere). Dr. Sank found Hiligh to be totally disabled from working and recommended both psychotherapeutic

---

**1.** Hiligh was placed in a temporary total disability status due to his physical workplace injury from February to March 1997. In mid-March 1997, he was released to work on light duty, but was returned to temporary total disability status in late-March 1997 and remained in that status until May 1997. In May 1997, Hiligh was released to return to work on light duty and in August 1997, was released to return to work without restrictions. He resumed his part-time employment with Federal Express in October 1997.

**2.** Dyspareunia is defined as "sexual intercourse accompanied by pain; difficult sexual intercourse." 1 J.E. SCHMIDT'S, ATTORNEY'S DICTIONARY OF MEDICINE, D-168 (1992).

and psychopharmacologic interventions prior to his return to work. Federal Express then requested that Dr. Bruce Smoller, a psychiatrist, evaluate Hiligh's psychological condition. Dr. Smoller diagnosed Hiligh with clinical depression and noted that he needed further psychiatric treatment. Dr. Smoller found the depression related-at least in part-to the workplace injury and opined that Hiligh could return to work part-time for three weeks, but could return to work full time thereafter.

On December 23, 2004, the Administrative Law Judge ("ALJ") found that Hiligh was not entitled to temporary total disability benefits from December 20, 1997, for his physical injuries, as he concluded that Hiligh's excessive tardiness—the reason Federal Express fired him—was unrelated to his workplace injury. The ALJ found, however, that Federal Express should pay temporary total disability benefits to Hiligh from December 29, 1998, to the present and continuing for his psychological injuries that had manifested later. The ALJ concluded that Federal Express should pay Hiligh benefits equal to his average weekly wage at the time of his termination. In doing so, the ALJ rejected Hiligh's argument that he was entitled to the minimum compensation rate because his actual average weekly wage was less than the statutory minimum. The ALJ reasoned that D.C.Code § 32–1505(c) only provides minimum compensation for those claimants who are *permanently* totally disabled and because Hiligh was only *temporarily* totally disabled, the minimum compensation rate did not apply.

Both Hiligh and Federal Express filed administrative appeals, and the Compensation Review Board ("Board") affirmed on all issues except that it concluded that Hiligh's compensation rate should be his average weekly wage earned at the time

he incurred his workplace injury and not at the time of his termination, and that the ALJ erred in finding that Federal Express had not provided rehabilitation and suitable alternative employment to Hiligh.

## II.

 This court will affirm a decision by an administrative agency when the decision is supported by substantial evidence in the record and is otherwise in accordance with applicable law. *Marriott Int'l v. District of Columbia Dep't of Employment Servs.*, 834 A.2d 882, 885 (D.C.2003) (internal citations omitted). This court reviews DOES's legal conclusions *de novo*, but defers to an agency's reasonable interpretation of the statute it is charged with administering. *Providence Hosp. v. District of Columbia Dep't of Employment Servs.*, 855 A.2d 1108, 1111 (D.C.2004). "Recognizing agency expertise ... we accord great weight to any reasonable construction of a statute by the agency charged with its administration." *Mills v. District of Columbia Dep't of Employment Servs.*, 838 A.2d 325, 329 (D.C.2003). The agency's interpretation is binding unless plainly erroneous or inconsistent with the enabling statute. *Providence Hosp.*, 855 A.2d at 1111.

Hiligh's primary argument is that the statutory minimum compensation rate set forth in D.C.Code § 32–1505(c) applies to both permanent and temporary total disability claims. Section 32–1505(c) of the D.C.Code states, "[t]he minimum compensation for total disability or death shall be 25% of the maximum compensation." Although Hiligh argued that the term "total disability" was clear and applied to both permanent total disability claims and temporary total disability claims, the Board disagreed. The Board first confirmed that DOES had addressed whether the minimum compensation rate applied to tempo-

rary total disability claims in prior cases, but that the Director had reached inconsistent conclusions. The Board noted that those cases had been decided prior to the establishment of the Compensation Review Board,[3] and therefore, were only persuasive authority. *See* 7 DCMR § 255.7 (2005). Concerned that those cases "ha[d] not proved to be elucidating and ha[d] instead caused confusion," the Board decided "to begin anew" its analysis of whether D.C.Code § 32–1505(c)'s minimum compensation rate applied to temporary total disability claims.

In its analysis, the Board began by reviewing principles of statutory construction as set forth by both the Supreme Court and this court. The Board correctly noted that where the statute's language is plain and unambiguous, the plain meaning is binding, *see Hudson Trail Outfitters v. District of Columbia Dep't of Employment Servs.*, 801 A.2d 987, 990 (D.C.2002), but that courts will look to legislative history to resolve ambiguities. *See generally District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 712 (D.C.1987) (internal quotation omitted) (acknowledging that where the statutory language is ambiguous, we examine the statute's legislative history for assistance).

 In applying these principles of statutory construction to D.C.Code § 32–1505(c), the Board concluded that while the term "total disability" appeared to be clear, the statute is susceptible to alternative constructions because the Act defines two distinct types of total disability: permanent total disability and temporary total disability.[4] D.C.Code §§ 32–1508(1) & (2) (2001). The Board then turned to the statute's legislative history and determined that it resolved the matter of interpretation. The section-by-section analysis included in the Committee Report states that the provision at issue "establishes minimum compensation for *Total Permanent Disability* or death . . . ." REPORT OF THE COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, Bill 3–106 at 14 (January 29, 1980) (REPORT) (emphasis added). Thus, the Board concluded that the Council's intent to provide minimum compensation only for permanent total disability was clear.[5] Given the thoughtful analysis by the Board of the statute it is charged with administering, along with the language of the legislative history, we are satisfied that the Board's conclusion, that the minimum compensation rate is inapplicable to persons who are temporarily totally disabled, is neither plainly erroneous nor inconsistent with the enabling statute.[6] *Providence Hosp.*, 855 A.2d at 1111. Thus, we must sustain that conclusion.

### III.

 Having concluded that the Board properly determined that Hiligh was not entitled to the minimum compensation rate because Hiligh is temporarily totally disabled, we turn to Federal Express's petition. Federal Express argues that the

---

3. The Board was created following the Council of the District of Columbia's passage of the D.C. Workers' Compensation Administrative Reform and Anti–Fraud Amendment Act of 2004, D.C.Code § 32–1521.01 (2005).

4. As further evidence of the term's ambiguity, the Board noted that the Director had previously interpreted it in various ways and reached conflicting conclusions.

5. The Board also recognized that "among the purposes of the Act is an intent to foster and encourage an injured employee's return to work" (citing REPORT, *supra*, at 2), and was of the view that "[t]o pay an injured employee more money while disabled than he earned while working is a clear disincentive to returning to work."

6. Moreover, nothing else within the legislative history leads this court to conclude otherwise.

Board erred in determining that the compensation rate should be Hiligh's actual average weekly rate at the time he incurred his injury because the Act mandates that qualified claimants may only receive two-thirds of their actual average weekly wage. *See* D.C.Code § 32–1508(2) ("In case of disability total in character but temporary in quality, 66 2/3% of the employee's average weekly wages shall be paid to the employee during the continuance thereof."). For the reasons stated below, we agree and therefore reverse this portion of the Board's decision.

In reaching its conclusion that Hiligh was entitled to one hundred percent of his actual average weekly wage at the time he sustained his injury, the Board relied on the Maryland Workers' Compensation Commission's policy to award temporarily totally disabled claimants one hundred percent of their actual weekly wage where their actual weekly wage is less than the statutorily provided minimum compensation rate. The Board stated that it believed that adoption of Maryland's interpretation was consistent with and furthered the humanitarian purposes of the District's workers' compensation laws.

■ The Board's reliance on the law of our sister jurisdiction, however, is misplaced. Maryland's law expressly provides that claimants will receive their actual average weekly wage as compensation where that wage is less than the statutory minimum compensation rate. MD. LABOR AND EMPLOYMENT §§ 9–621,–626 (2005). While this court appreciates that the Act is be interpreted in a manner consistent with its humanitarian purpose, that mandate is not so broad as to allow the Board to create statutory remedies that are inconsistent with other express provisions of the Act. The District of Columbia's Act clearly states, without exception, "in case of disability total in character, but temporary in

quality, 66 2/3% of the employee's average weekly wages shall be paid...." D.C.Code § 32–1508(2). As there is no provision in the District's statute from which the Board's interpretation can reasonably arise, we conclude that the Board's conclusion is legally erroneous. *Weaver Bros. v. District of Columbia Rental Housing Comm'n,* 473 A.2d 384, 388 (D.C. 1984) (reversing where the agency's interpretation is inconsistent with the section's language).

## IV.

■ Hiligh's final argument is that the Board erred in concluding that his compensation began to accrue in December 1998 as opposed to December 1997, when he was terminated from his employment. Specifically, he argues that the Board erred in finding that his excessive tardiness, the reason for his termination, was not caused by his work-related injury. We disagree.

■ It was Hiligh's obligation to provide evidence that the wage loss he suffered in December 1997 was caused by the injury he suffered at work. *See Landesberg v. District of Columbia Dep't of Employment Servs.,* 794 A.2d 607, 612 (D.C. 2002) ("The Act ... does not afford the claimant a presumption regarding the nature and extent of his or her disability."). In other words, the burden was on Hiligh to show that any inability to sleep which resulted from the injury he sustained at work caused his excessive tardiness from October 1997 through December 1997; thus, proving that he suffered wage loss in December 1997 due to his injury. Although Hiligh and his mother testified about his difficulty sleeping after incurring his workplace injury, neither testified that this was a problem from October 1997 through December 1997, the period where Federal Express complained of Hiligh's excessive tardiness. Moreover, and more

fundamentally, Hiligh never testified that he was late because of his trouble sleeping. In addition, Hiligh's medical records do not reflect his inability to sleep or even that he reported any problems to his treating physician during the relevant period. Indeed, Dr. Regan cleared Hiligh to return to work by August of 1997, and Hiligh's urologist placed no restrictions on his physical activities after October 2, 1997. Further, Hiligh did not present to Dr. Sank until December of 1998, a year after he was fired, regarding any emotional injury. Therefore, we conclude that the Board did not err in concluding that Hiligh failed to show that the wage loss he suffered in December 1997 was caused by his work-related injury.

For the foregoing reasons, we affirm as to the Board's findings that the minimum compensation rate does not apply to temporarily totally disabled claimants and that Hiligh's termination was not caused by his work-related injury. We reverse, however, as to the Board's finding that Hiligh is entitled to his actual average weekly wage at the time of his injury and remand to the Board with instructions for findings consistent with this opinion.

*So ordered.*