WASHINGTON HOSPITAL
CENTER, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

Carol Middledorf Kelly, Intervenor.

Carol Middledorf Kelly,
Cross–Petitioner,

v.

District of Columbia Department
of Employment Services,
Respondent,

and

Washington Hospital Center,
Intervenor.

Nos. 07–AA–307, 07–AA–360.

District of Columbia Court of Appeals.

Argued Dec. 18, 2008.
Decided Nov. 12, 2009.

 

In turn, Kelly cross-petitions for our review of the CRB's order affirming the ALJ's decision not to adjust the computation of her average weekly wage. For the reasons that follow, we affirm the CRB's order with respect to the employer's petition, but grant the cross-petition and remand the case for proper calculation of claimant's average weekly wage.

John C. Duncan, III, Washington, DC, and William S. Sands, Jr., Fairfax, VA, for petitioner.

Richard W. Galiher, Jr., Chevy Chase, MD, for intervenor/cross-petitioner.

Linda Singer, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, filed a statement in lieu of brief for respondent.

Before RUIZ, and KRAMER, Associate Judges, and STEADMAN, Senior Judge.

RUIZ, Associate Judge:

Petitioner, Washington Hospital Center (WHC), seeks our review of the Compensation Review Board's (CRB) order affirming the decision of Administrative Law Judge (ALJ) Jeffrey Russell, granting in part the claim for workers' compensation benefits filed by Carol Middledorf Kelly.

## I.

On November 2, 1993, claimant injured her lower back in the course of her employment as a nuclear medicine technician with Washington Hospital Center, while assisting a patient to alight from a table. WHC voluntarily paid medical expenses for back surgery as well as benefits for total temporary disability; then when Kelly began part-time light duty work (which she did until March 12, 2001), WHC paid reduced benefits for partial temporary disability because it believed she was voluntarily limiting her opportunities for employment.

On April 3, 2001, Kelly filed a claim seeking permanent total disability benefits and a modification to the stipulated average weekly wage.[1] A formal hearing was held before ALJ Karen Calmeise on March 13, and March 21, 2002. ALJ Calmeise left the agency without issuing an opinion in the case, and the matter was eventually assigned to ALJ Jeffrey Rus-

---

1. This case presents for review one of several claims filed after claimant's 1993 accident at work. The first claim resulted in a compensation order finding WHC responsible for psychiatric treatment related to the work injury. *See Middledorf v. Wash. Hosp. Ctr. (Middledorf I)*, No. 96–321 (Hearings and Adjudications Section December 24, 1997), *available at* 1997 D.C. Wrk. Comp. Lexis 162. The next resulted in an order denying claimant's request for a computerized home-work station for use at home as part of her effort to begin home-bound employment. *See Middledorf v. Wash. Hosp. Ctr. (Middledorf II)*, No. 96–321A (Hearings and Adjudications Section April 29, 1999), *available at* 1999 D.C. Wrk. Comp. Lexis 158. According to the parties' briefs, a third claim was dismissed because it was determined that claimant had failed to provide adequate notice of the full extent of medical services being claimed.

sell,[2] who held a formal hearing on February 23, and April 5, 2005.

On November 29, 2005, ALJ Russell issued the order which both parties ask that we review. ALJ Russell found that:

> Claimant's condition is characterized by constant severe physical pain in her low back and legs, ... physical weakness, nausea, dizziness, sleep disruptions and irregularity, anxiety and psychological distress, with attendant difficulties concentrating and focusing on detailed tasks. Her symptoms wax and wane, but are present at all times. Claimant is unable to drive herself safely, and her periods of fatigue and other conditions are irregular and unpredictable.

*Middledorf v. Wash. Hosp. Ctr. (Middledorf III)*, No. 96–321E, slip op. at 5–6 (Administrative Hearings Division November 29, 2005), *available at* 2005 D.C. Wrk. Comp. Lexis 317. The ALJ based his conclusions on the testimony of claimant's expert, Dr. Bussey, which he credited, and of the claimant, to whom he "accord[ed] a high degree of credibility." *Id.* slip op. at 5. Referring to the report of the employer's vocational expert, ALJ Russell noted that while "probably correct [in opining] that there are some persons with similar conditions who might be employable[,] the difference ... between this [c]laimant and some other similarly trained, experienced and educated individual ... is ... this claimant's conditions, which are multiple and varied, and are each unpredictable and varying independently of one another." *Id.* ALJ Russell concluded that "[c]laimant is permanently totally disabled as a result of the work injury ... and that the previously established average weekly wage is *res judicata.*" *Id.* slip op. at 5–6. Upon review, the CRB affirmed the Com-

pensation Order. *Middledorf v. Wash. Hosp. Ctr. (Middledorf IV)*, No. 06–20, slip. op. at 6 (Compensation Review Board March 23, 2007), *available at* 2007 WL 1227538, 2007 D.C. Wrk. Comp. Lexis 157.

## II.

The Hospital argues that the ALJ failed to consider the testimony of its two vocational experts, Doctors Koslow and Capizzi, and that the ALJ erred in refusing to allow Dr. Koslow to testify at the formal hearing. With respect to the award of permanent total disability benefits, the Hospital argues that the start date is "speculative" and the amount is in excess of what the employee asked for.

■ "Although our review of agency decisions is deferential, ... [o]ur principal function 'in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues.'" *Georgetown Univ. Hosp. v. District of Columbia Dep't of Employment Servs.*, 916 A.2d 149, 151 (D.C.2007) (quoting *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.1972)). Nevertheless, we do not require an ALJ to give reasons for accepting one expert's opinions rather than another's. *See Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 821 A.2d 898, 904 (D.C. 2003). Nor do we require an ALJ to "inventory the evidence and explain in detail why a particular part of it was accepted or rejected." *Sturgis v. District of Columbia Dep't of Employment Servs.*, 629 A.2d 547, 554 (D.C.1993). Here, the ALJ specifically credited the testimony of claimant and her expert, Dr. Bussey, which directly contradicted the testimony

---

**2.** Prior to being assigned to ALJ Russell, the case was assigned to ALJ E. Cooper Brown who held two pre-hearing conferences on No-

vember 15 and December 20, 2004. Judge Brown was then elevated to the CRB and the case was assigned to ALJ Russell.

and reports of the Hospital's vocational experts. Of necessity, the ALJ rejected their expert opinion, but that does not mean that the ALJ failed to consider it.

Although it appears that the Compensation Order mistakenly attributed Dr. Koslow's opinions to a Dr. Malcolm, the discussion in the Compensation Order giving reasons for rejecting that testimony in favor of that of both Dr. Bussey and the claimant makes clear that the ALJ considered the substance of Dr. Koslow's report.[3] That the ALJ did not refer specifically to Dr. Capizzi's opinions is not surprising as they were relevant to petitioner's argument that claimant had failed to cooperate with vocational rehabilitation, an argument we conclude, *infra*, petitioner had waived.

The Hospital also argues that ALJ Russell's refusal to permit Dr. Koslow to testify was an abuse of discretion. "The order in which evidence and allegations shall be presented and the procedures at the hearing generally, ... shall be in the discretion of the [ALJ]." 7 DCMR § 223.5 (2008); *see also Cooper v. Safeway Stores, Inc.*, 629 A.2d 31, 35 (D.C.1993) ("A trial court has broad discretion in the admission or exclusion of expert testimony...."). Employer's request to present the testimony of Dr. Koslow came only after the case had been continued, from February 23 to April 5, 2005. In denying employer's request, ALJ Russell explained that the case had not been continued to allow the Hospital to present new witnesses, but rather, at the Hospital's request, so that its counsel could continue to cross-examine claimant's expert, Dr. Bussey. Nevertheless, at the conclusion of the cross-examination of Dr.

Bussey, the ALJ admitted Dr. Koslow's proffered report into evidence, noting, "I'm going to accept into evidence the report of Ms. Koslow in that it was the subject of extensive cross examination without objection." The CRB concluded that ALJ Russell's exclusion of Dr. Koslow's testimony was not an abuse of discretion because the parties were required to have proffered any expert testimony and file exhibits in advance of the first hearing date in February, and the exclusion of Dr. Koslow's testimony was not unfairly prejudicial to the Hospital in view of the fact that Koslow's report was admitted.

■■■ Our limited role in reviewing the decision of the CRB permits us to reverse only if we conclude that the decision was "arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Landesberg v. District of Columbia Dep't of Employment Servs.*, 794 A.2d 607, 612 (D.C.2002). We do not find such deficiencies here. "The mere fact that evidence has been improperly excluded by an agency is not enough to cause reversal of an agency decision. It is only when the exclusion is so prejudicial as to result in an unfair hearing that a court will order a remand for further proceedings." *People's Counsel of District of Columbia v. Pub. Serv. Comm'n of District of Columbia*, 414 A.2d 516, 518 n. 3 (D.C. 1980) (internal quotation marks omitted) (quoting 4 JACOB A. STEIN, GLENN A. MITCHELL & BASIL J. MEZINES, ADMINISTRATIVE LAW § 30.03, at 30–12 (1979)). As we have discussed, the ALJ did take into account Dr. Koslow's report, and the Hospital has

---

**3.** Dr. Jody Malcolm provided vocational rehabilitation for claimant from December of 1996 through January of 2001. In the Compensation Order, however, the ALJ referred to a labor market survey in Dr. Koslow's report, in which several possible positions (mostly secretarial) claimant could obtain and perform were identified—a survey only Dr. Koslow had conducted. The Order also mentions the expert's consideration of claimant's self-employment with Mary Kay in 2002, again something that did not occur until after Dr. Malcolm's services ceased. *See id.*

not proffered any testimony it expected Dr. Koslow to provide that would have been different from or added significantly to what was in that report. Even if we assume that the ALJ should have permitted the testimony of Dr. Koslow, we agree with the CRB that the Hospital was not prejudiced because the ALJ allowed and considered Dr. Koslow's written report.

■ The Hospital also argues that the CRB erred in concluding that because the Hospital did not specifically raise claimant's voluntary limitation of income as a defense, it had been waived. According to the Hospital, the ALJ was on notice that it planned to present that defense, as evidenced by remarks made by ALJ Russell at several pre-hearing conferences. But even if the Hospital's counsel had suggested, pre-hearing, that he was thinking of such a defense, it was not raised during the hearing itself. *See Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 145 n. 7 (D.C.1983) (concluding that, because petitioner, after a ruling on an objection had been deferred pre-hearing, did not subsequently raise the objection during the formal hearing, in petitioner's concluding statement filed after the hearing, or in petitioner's petition for reconsideration filed after the agency's decision, the objection had been waived). The Hospital did not ask to reopen the hearing after the ALJ's order so that the ALJ could address the defense, nor did it petition for reconsideration of the CRB's decision. Nevertheless, it would appear that the ALJ did implicitly consider the substance of the Hospital's voluntary limitation of income defense, but rejected it.

The ALJ concluded that claimant's attempt at alternative employment represented "evidence of (1) her willingness to be employed if she were so able, and (2) her lack of physical capacity to regularly and routinely engage in even a minimal number of employment related activities for any significant period of time on a predictable basis."[4]

■ Finally, the Hospital argues that the ALJ failed to state "with reasonable clarity" the commencement date of the award of permanent total disability benefits, and that the CRB exceeded its authority in actually specifying the date. In the Compensation Order the ALJ stated: "I find there has been no improvement in Claimant's medical condition subsequent to the date of the last formal hearing at which time she was stipulated to be temporarily totally disabled. Accordingly, I find that Claimant's condition became permanent as of the date following that formal hearing." *Middledorf III*, slip op. at 4. Based on its review of the proceedings within the OAH, see *supra* note 1, the CRB concluded that the ALJ was referring to March 22, 2002, the day after the hearing before ALJ Calmeise on March 21. While the Hospital argues that the ALJ could have been referring to one of several possible dates, "[o]ur scope of review in this appeal is ... to determine whether the ... agency's findings are supported by substantial evidence and whether its conclusions of law follow rationally from its findings." *Spackman v. District of Columbia Dep't of Employment Servs.*, 590 A.2d 515, 516 (D.C.1991).[5] The CRB clearly articulated its basis for concluding

---

4. Similarly, we conclude that the Hospital waived its defense that claimant failed to cooperate with vocational rehabilitation efforts by not raising the issue before the CRB. *See Hisler v. District of Columbia Dep't of Employment Servs.*, 950 A.2d 738, 744 (D.C.2008).

5. Curiously, the ALJ also referred to this date as "the day following the formal hearing preceding the *last* Compensation Order." *Middledorf III*, slip op. at 4. The date of the last Compensation Order, however, was April 29, 1999. See *supra* note 1. There is nothing in the record to suggest that claimant ever

that the ALJ was referring to March 22, 2002, and its conclusion is both supported by substantial evidence and flows rationally from its findings.[6]

▮ Likewise, the Hospital's argument that it had not been afforded proper notice that claimant could be awarded disability benefits beginning on March 22, 2002, is without merit. So long as petitioner was aware of the type of benefit claimant might receive, the requirements of due process were met, even if the exact amount of such benefits were as yet to be determined. *See Transp. Leasing Co. v. District of Columbia Dep't of Employment Servs.*, 690 A.2d 487, 489 (D.C.1997) ("[T]he requirements of procedural due process are met if upon review the court is satisfied that a complainant was given adequate opportunity to prepare and present his [or her] position to the [hearing examiner] and that no prejudice resulted from the originally deficient notice.") (internal quotation marks omitted) (alterations original) (quoting *Ridge v. Police & Firefighters Ret. & Relief Bd.*, 511 A.2d 418, 424 (D.C.1986)).

### III.

In her petition for review, claimant seeks reversal of the ALJ's denial of her request to alter the average weekly wage used to calculate her disability benefits. The ALJ found that "the parties have previously stipulated to an average weekly wage," making the issue *res judicata.* The CRB affirmed, concluding that redetermination of claimant's average weekly wage was barred by the doctrine of *res judicata,* and not subject to any of its exceptions.

▮ We are presented, for the first time, with the application of two related doctrines within the area of disability compensation law. Traditionally, where parties agree, through stipulation, to an average weekly wage, they will be barred from later challenging that agreement by the doctrine of *res judicata. See Oubre v. District of Columbia Dep't of Employment Servs.*, 630 A.2d 699, 703 (D.C.1993). There are, however, exceptions to the doctrine of *res judicata,* including "manifest error in the record of the prior proceeding." *Id.* We conclude that exception applies here.

In *Oubre* we held that the manifest error exception to the doctrine of *res judicata* could apply to the challenge of a deter-

sought permanent total disability benefits from this date. We think it more likely that ALJ Russell was referring to the hearing preceding *this* Compensation Order. Regardless, our review is limited to determination of whether the CRB's finding was supported by substantial evidence, *see Spackman*, 590 A.2d at 516, and we find that it was.

6. We are not persuaded by the Hospital's argument that the CRB's determination was contrary to law, arbitrary, or capricious, because March 22, 2002 was "beyond the date(s) claimed"—an argument for which the Hospital provides no legal support. It appears from the record that March 22, 2002, *was not* beyond the date Kelly claimed to have been permanently totally disabled. In the Joint Pre–Hearing statement filed by the parties prior to the formal hearing before ALJ

Calmeise, the parties stipulated that claimant sought permanent total disability benefits from January 16, 2002, to the present and continuing. Additionally, in the stipulations filed before ALJ Brown, the parties agreed that claimant was seeking permanent total disability benefits from the time it was determined that she had reached maximum medical improvement-and not a fixed date as the Hospital would suggest. The only evidence referred to by the Hospital is a statement made by claimant's counsel during a prehearing conference before ALJ Brown, that claimant's physician, Dr. Moskowitz, found her to have reached maximum medical improvement *at least by* September 27, 2004. We find the CRB's decision to have been supported by substantial evidence. *See Spackman*, 590 A.2d at 516.

mination of a claimant's average weekly wage. There, the parties had stipulated to an average weekly wage, but their agreement was based upon a mutual mistake of fact—an erroneous wage figure provided by the employer. *Id.* at 704. As it turned out, the average weekly wage that the parties had agreed to was lower than is allowed by statute. Noting that under the statute "the parties could not have voluntarily entered an agreement reducing the amount of petitioner's benefits," *id.*; *see also* D.C.Code § 36–316(b) (Supp.1999) (current version at D.C.Code § 32–1516(b) (2001)) ("No agreement by an employee to waive his right to compensation under this chapter shall be valid."), we concluded:

> It seems incongruous that where [the parties entered into an agreement reducing the amount of claimant's benefits] under a mutual mistake of fact during the course of an administrative proceeding, they should be bound by the agreement even as additional claims for the original injury are adjudicated under the Act.

*Oubre,* 630 A.2d at 704.

▬▬▬ We conclude that in light of the humanitarian purpose of the workers' compensation statute, *see Vieira v. District of Columbia Dep't of Employment Servs.,* 721 A.2d 579, 584 (D.C.1998), *Oubre* must be read as standing for the proposi-

tion that, even if there is no mutual mistake of fact,[7] where parties enter into an agreement setting the average weekly wage pursuant to a calculation that is statutorily prohibited, the doctrine of *res judicata* will not later bar a challenge to that agreement.

The question thus becomes whether the parties in this claim entered into an agreement setting claimant's average weekly wage pursuant to a calculation that was statutorily prohibited. The statute, at the time of claimant's injury, provided:

> Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:
>
> * * *
>
> (4) If at the time of injury wages are fixed by the day, hour, or by the output of the employee, the average weekly wage shall be computed by dividing by 13 the total wages the employee earned in the employ of the employer in the 13 consecutive calendar weeks immediately preceding the injury....

D.C.Code § 36–311(a)(4) (Supp.1993) (current version at D.C.Code § 32–1511 (2001)).[8]

---

7. Put another way, the reason for setting aside the agreement is based on the statute, not principles of contract. As a matter of contract law, mutual mistake of fact will suffice to make a contract voidable, outside the context of workers' compensation. *See DSP Venture Group, Inc. v. Allen,* 830 A.2d 850, 852 (D.C.2003) ("This jurisdiction follows what has been called the 'objective' law of contracts, which generally means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertak-

ing, or unless there is fraud, duress, *or mutual mistake.'*") (emphasis added) (alteration in original) (quoting *Geiger v. Crestar Bank,* 778 A.2d 1085, 1091 (D.C.2001)).

8. The parties apparently agree that the statute in force at the time of injury applies. Shortly after claimant's injury, the statute was amended to provide for a calculation based upon 26 rather than 13 weeks preceding the work injury. *See* D.C.Code § 32–1511 (2001); *cf. Giant Food, Inc., v. District of Columbia Dep't of Empl. Servs.,* 934 A.2d 921, 923 (D.C. 2007) (upholding DOES determination that repeal of statute that required workers' compensation payments to be reduced by retire-

Here, the parties agreed to an average weekly wage based upon a calculation using claimant's wages from the fourteen weeks prior to her accident at work.[9] However, claimant testified that during that period she missed two weeks of work as a result of a stomach condition. She argues that those two weeks—during which she did not receive any compensation—skewed the average and should not have been used in calculating her weekly wage for purposes of disability compensation.

We addressed a similar issue in *UPS v. District of Columbia Dep't of Employment Servs.*, 834 A.2d 868 (D.C.2003). There, a claimant sought disability compensation based on an average weekly wage that excluded two of the thirteen weeks prior to his accident at work because during that time claimant had participated in a strike, and received no compensation from his employer. *Id.* at 869. We affirmed the agency's exclusion of the two weeks based on our interpretation of the statute consistent with a purpose to "produce an honest approximation of claimant's probable future earning capacity." *Id.* at 872 (internal quotation marks omitted) (quoting 5 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 93.01[1][e], at 93–11 (2003)). In determining a claimant's average weekly wage, we held, the correct approach is to "reject[ ] a yardstick which would obviously ... distort[ ] the claimant's future earning capacity" and to "focus[ ] on the need for an equitable outcome that provide[s] 'a fair and rational estimate of claimant's average weekly wage.'" *Id.*

at 873 (quoting *George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 497 A.2d 103, 109 (D.C.1985)). Importantly, we noted that "claimant's absence due to participation in a strike was *an unavoidable cause....*" *Id.* at 874 (emphasis added).

Applying these principles to this case, we hold that the parties' stipulated average weekly wage was contrary to law. Because claimant did not work (and was not paid) during two of the thirteen (or fourteen as calculated by the Hospital) weeks preceding her accident at work, those two weeks ought not to have been included in calculating her average weekly wage. We discern no difference between this case, in which claimant's absence from work was unavoidable due to illness, and the circumstances in *UPS* in which the claimant's absence from work was deemed unavoidable because he was participating in a workers' strike. As claimant will not be held, by statute, *see* D.C.Code § 32–1516(b) (2001), to an agreement that in effect waives her right to compensation by reducing the amount to which she is lawfully entitled, the stipulation in prior proceedings is based upon manifest error. Consequently, *res judicata* does not bar the claimant's challenge to the prior determination of her average weekly wage.

* * *

We remand the case to the CRB with instructions to further remand to the ALJ for a proper calculation of claimant's aver-

ment income "operate[d] retrospectively," so that no offset was required for claimant who was injured before the repeal, but who began receiving retirement income after the repeal).

9. It is unclear from the record why the parties calculated claimant's average weekly wage based on 14 weeks of pay rather than the statutorily prescribed 13 weeks. The Hospital

notes only that by adding the fourteenth week, claimant's average weekly wage was higher than had only thirteen weeks been used. This, of course, is irrelevant to claimant's argument that had two weeks in which she did not work not been included, her average weekly wage would be higher still.

age weekly wage. In all other respects, the CRB's decision is affirmed.

*So ordered.*