*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0460

SKYLAR M. LITTLE, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON FREEDOM, *et al.*, INTERVENORS.

On Petition for Review of an Order of the District of Columbia
Department of Employment Services Compensation Review Board
(2023-CRB-000009)

(Submitted June 12, 2024                    Decided September 5, 2024)

*Benjamin T. Boscolo* was on the briefs for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, filed a Statement in Lieu of Brief in support of respondent.

*Joel E. Ogden* and *Genevieve E. Hornik* were on the brief for intervenors.

Before DEAHL and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge*.

DEAHL, *Associate Judge*: More than two decades ago, Skylar Meinhardt[1] suffered a left knee injury while playing for the Washington Freedom, a professional soccer club based in the District at the time. There is some uncertainty about the precise date she sustained that injury; both she and the Freedom sometimes posit that it was July 7, 2001, and at other times assert that it was March 1, 2002. The particular date of that injury does not matter here—perhaps it was a cumulative injury suffered on both dates—so we will call it the '01-'02 left knee injury. But we also note that Meinhardt's imprecision in articulating her claim surely contributed to some confusion about what exactly her claim was, as we will explain in a moment.

The present action arises from a workers' compensation claim that Meinhardt made related to a right knee disability that arose many years later. *See* D.C. Code §§ 32-1501 to -1545. In short, Meinhardt's claim is that her longstanding '01-'02 left knee injury caused her to compensate, i.e., to change her gait so that she favored that left knee. That led to the deterioration of her right knee, causing her symptomatic pain that she first complained about in 2015 (though she had made previous complaints about right knee pain during her soccer career, which ended in

---

[1] Ms. Meinhardt's briefs and the record materials refer to her variously as "Skylar Little-Meinhardt," "Skylar Meinhardt-Little," and "Skylar M. Little," among other things. While the case caption reflects the name on her petition for review, we refer to petitioner as "Skylar Meinhardt," because that is how she identified herself in her testimony.

2003). That deterioration eventually necessitated two surgeries to repair a torn meniscus in her right knee in 2016 and 2019. We call that the 2015 right knee injury. Meinhardt sought benefits related to her 2015 right knee disability on the basis that it was causally related to her work-related '01-'02 left knee injury.

An Administrative Law Judge denied Meinhardt's claim, stating that the sole issue before him was, "[w]hether [Meinhardt's] right knee injuries on March 1, 2002, are causally related to the work-related injury on July 7, 2001." As we have already previewed, that was not the issue before the ALJ—Meinhardt never claimed to have suffered a right knee injury in 2002—despite the ALJ's repeated assertions to the contrary. The issue was instead whether Meinhardt's 2015 right knee disability was related to her '01-'02 left knee injury. Proceeding on a mistaken view of the question before him, the ALJ denied Meinhardt's claim largely because (1) there was evidence that she had right knee surgeries prior to March 2002—in 1996, 1999, and 2001—and (2) because the evidence cast doubt on Meinhardt's supposed claim that she "suffered a work-related injury to her right knee on March 1, 2002," which, again, was never her claim.

The Compensation Review Board affirmed the denial of benefits, and it too repeatedly misstated the relevant issue before it as pertaining to whether Meinhardt's "March 1, 2002, right knee injury was causally related to her July 7,

2001, left knee work-related injury." The CRB reasoned that the ALJ was "well supported" when he discredited her claim that "she suffered a work-related injury to her right knee on March 1, 2002," a claim she did not make.

We vacate the CRB's order and remand for further proceedings. "In a worker's compensation case, we review the decision of the [CRB], not that of the ALJ." *Anderson v. D.C. Dep't of Emp. Servs.*, 303 A.3d 370, 372 (D.C. 2023) (quoting *Wash. Metro. Area Trans. Auth. v. D.C. Dep't of Emp. Servs.*, 926 A.2d 140, 147 (D.C. 2007)). "We will not disturb the CRB's ruling so long as 'substantial evidence' supports each factual finding and its legal conclusion 'flows rationally' from those findings." *D.C. Pub. Sch. v. D.C. Dep't of Emp. Servs.*, 262 A.3d 213, 219 (D.C. 2021). But we will reverse the CRB's decision if it "'was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law.'" *Lee v. D.C. Dep't of Emp. Servs.*, 275 A.3d 307, 312 (D.C. 2022) (quoting *Wash. Hosp. Ctr. v. D.C. Dep't of Emp. Servs.*, 983 A.2d 961, 965 (D.C. 2009)).

The ALJ's and CRB's analysis was fatally infected by their mistaken views about what Meinhardt's claims were. At bottom, the ALJ found Meinhardt to be non-credible because her own testimony "call[ed] into question whether she suffered a work-related injury to her right knee on March 1, 2002, as alleged"—but that was never her claim. The CRB then upheld the ALJ's ruling based on that same mistaken

understanding of the issue before it, so we cannot say the CRB's legal ruling flowed rationally from its findings because it misunderstood the very question presented. Meinhardt consistently claimed that a left knee injury she suffered in 2001 and/or 2002 eventually led to a right knee disability many years later in 2015. That is the claim that needs to be assessed, and the ALJ and CRB simply never assessed it with a proper understanding of the issue before them.

We offer one further thought concerning the evidence highlighted by the ALJ and CRB as rebutting the presumption of compensability. The ALJ and CRB both acknowledged that Meinhardt presented evidence of a workplace-related disability to her right knee sufficient to trigger the presumption of compensability, thereby shifting the burden to the employer to present "specific and comprehensive" evidence to rebut that presumption. *See generally Waugh v. D.C. Dep't of Emp. Servs.*, 786 A.2d 595, 600 (D.C. 2001) (articulating three-step burden-shifting analysis applicable to workers' compensation claims). Specifically, Meinhardt had an independent medical examination performed by Dr. Michael Franchetti, who concluded that her right knee condition was "causally related to" her '01-'02 left knee injury—he believed "to a reasonable degree of medical certainty" that the earlier injury caused Meinhardt to change her gait, leading to her right knee disability

in 2015.[2] The evidence relied upon by the ALJ and CRB as rebutting that presumption was a letter from one of Meinhardt's treating physicians, Dr. Clinton Soppe. Meinhardt's counsel wrote to Dr. Soppe asking, among other things: "Is the right knee condition you have diagnosed related to her left knee injury?" Dr. Soppe responded tersely, a year later, writing: "No as her right knee pain came on acutely and was treated in the ER 09/2016."

We agree with Meinhardt that the ALJ and CRB erred in treating this as "specific and comprehensive" evidence sufficient to rebut the presumption of compensability, given that Dr. Soppe's stray statement was at plain odds with Meinhardt's medical records. Meinhardt's contemporaneous medical records are crystal clear that she did not suffer an acute right knee injury in September 2016— her emergency room visit in September 2016 was related to her left knee. Meinhardt's medical records actually show that she had complained of right knee pain during a December 2015 visit with Dr. Bert Mandelbaum. She then reiterated those complaints seven months later, in June 2016, when in a visit with Dr. Joshua

---

[2] The ALJ and CRB both seemed to discount Dr. Franchetti's testimony because, while he linked the 2015 right knee disability to the "March 1, 2002, right knee injury," he "did not render an opinion on whether Ms. [Meinhardt's] March 1, 2002, right knee injury was causally related to her July 7, 2001, left knee work-related injury." By now, the reader should recognize this as another manifestation of the ALJ's and CRB's confusion about what Meinhardt's claim is.

Christensen she sought an orthopedic evaluation for "severe" "right knee pain" that developed "about 7 months" earlier, with "no specific injury." And Meinhardt then had surgery on that right knee in August 2016, before her September emergency room visit related to her left knee. Those records clearly do not reflect an acute injury to her right knee in September 2016, but instead roughly align with Meinhardt's testimony that her right knee "just slowly deteriorated and got worse and worse until [she] got to the point where [she] needed to get something done about it."

That is not to say that there was no evidence that might have rebutted the presumption of compensability, and we leave it to the ALJ in the first instance to reassess the evidence with a proper understanding of the claim before him. Meinhardt's prior right knee surgeries in 1996, 1999, and 2001 were undoubtedly powerful evidence against her, particularly given that she denied having right knee problems around that time, so that the surgeries cast considerable doubt on her overall credibility. At the same time, we note that a pre-existing right knee malady would not preclude her claim, because aggravations even of pre-existing injuries are compensable, and Meinhardt's claim is that her '01-'02 left knee injury led to a deterioration of her right knee (whatever its pre-existing condition). *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 267 A.3d 1068, 1073 (D.C. 2022) ("It is well settled that 'an aggravation of a preexisting condition may constitute a compensable

. . . injury.'" (quoting *King v. D.C. Dep't of Emp. Servs.*, 742 A.2d 460, 468 (D.C. 1999))).

In sum, because both the ALJ and the CRB misunderstood the central question before them, we reverse the CRB's decision and vacate the ALJ's underlying compensation order. We remand the case to the CRB and further instruct it to remand the case to the ALJ for reconsideration in light of the above, with the central question for the ALJ on remand being whether Meinhardt's 2015 right knee disability was causally connected to her '01-'02 left knee injury.

*So ordered.*